Andrew McClain, J.,
delivered the opinion of the Court.
The plaintiff in error was indicted, with a number of others, in the Circuit Court of Jefferson County, at the August Term, 1865, for the murder of John Thorn-hill. There was a change of venue to Grainger County, where he was put upon his trial at the August Term, 1866, of the Circuit Court, and found guilty of murder in the second degree, and judgment was pronounced accordingly, and he appealed to this Court. The cause was heard in this court at the regular term, *519 1866, and was reversed. The case is reported in 3 Coldwell’s Rep., 85.
At the August Teiun of the Circuit Court of Grain-ger County, 1869, he was again tried, and again found guilty of murder in the second degree, and sentenced to imprisonment for ten years in the penitentiary, and he has again appealed to this Court.
The plaintiff in error was a soldier, and was at the time the deceased was killed, one of a scout. under the command of Capt. Bell. The deceased was killed near the house of his uncle, Richard Thornhill.
Richard Thornhill, on the morning the deceased was killed, had gone in company with Laramore from home, and when about three and-a-half miles from his house, they met this scout. The plaintiff in error was then with them, and riding a mule, which it appears was the only mule with the scout.
Thornhill and Laramore, soon after they met this scout, returned toward home, and went a near way, and when within one half or three quarters of a mile of Thornhill’s house, they heard the sound of fire arms at Thornhill’s house.
Laramore testified that he “hurried on before R. Thornhill, and got to his house first.”
Jones is the only witness examined who was present at the time the deceased was killed. Jones had accidentally got in company with this scout a short distance from the house of Thornhill. When they arrived, the deceased was at the house, which was near the road. The deceased went out in the direction of the scout. They commenced firing at him immediately. *520 He exclaimed, “Lord, boys, what are you killing me for,” and ran toward a wood in the rear of the house. The scout passed through a gate near the house,1 and pursued him. He was killed about one hundred and fifty or two hundred yards from the house. He was shot in eighteen places, and died immediately.
Bichard Thornhill testifies as follows: “When I got in about one hundred and fifty yards of my house, I saw the men gathering up in the road. When I got up I asked what was the matter, to which one of them replied, they had killed a damned rascal; that they had killed John Thornhill.”
The bill of exceptions here continues thus: “At this point defendant’s counsel objected to any testimony from the witness as to what was said or done, or who he saw, unless the defendant Higgs was there. The objection was overruled, and the witness directed to proceed.” The witness then proceeded thus: “Capt. Jim Bell said they had been ordered there to kill John Thornhill, and they had done so.”
We are satisfied that Biggs was not present when this conversation occured. Neither Thornhill or Lara-more saw Biggs when they arrived. Thornhill knew him well, and Laramore testifies that Banlcin and Biggs were the only men in the scout that he knew. Biggs was distinguished from the others in this, that he was riding the only mule with the scout. If Biggs had been there when they arrived, we think it would not have escaped the attention of both these witnesses. It remains, then, to consider, whether this conversation detailed by Thornhill was a part of the res gestee: *521 Greenleaf in his work on evidence, 1 vol. sec. 108, says: “The affairs of men consist of a complication of circumstances so intimately interwoven as to be hardly separable from each other. Each owes its birth to some preceding circumstances, and in its turn, becomes the prolific parent of others, and each during its existence, has its inseparable attributes and its kindred facts materially affecting its character, and essential to be known in order to a right understanding of its nature.”
These surrounding circumstances, constituting parts of the res gestee, may always be shown to the jury along with the principal facts, and their admissibility is determined by the judge according to the degreé of their relation to that fact, and in the exercise of his sound discretion, it being extremely difficult, if not impossible, to bring this class of cases within the limits of a more particular description.
The principal points of attention are, whether the circumstances and declarations offered in proof, were contemporaneous with the main fact under consideration, and whether they were so connected with it as to illustrate its character.
At sec. 110, same volume, he says: “It is to be observed, that where declarations offered in evidence are merely narrative of a past oeeurrenee, they cannot be received as proof of the existence of such occurrence. They must be concomitant with the principal act, and so connected with it as to be regarded as the mere result and consequence of the co-existing motions, in *522 order to form a proper criterion for directing the judgment 'which is to be formed upon the whole conduct.”
Guided by the rules here enunciated, Ave will inquire, was this conversation detailed by the witness, Thornhill, contemporaneous and concomitant with the act of killing, and so connected with it as to illustrate the character of the transaction, or were the statements detailed merely a narrative of past occurrence?
We have scanned the record with much care, in the endeavor to ascertain how far these men and the witness, Thornhill, were from the body of the deceased, at the time this conversation occurred. We can only perceive from the evidence, that this conversation occurred in the road; but how far this point in the road was from the body of the deceased, is a matter of inference.
If these men had returned to the house, and had gone out at the same gate at which they had entered, and were in the road opposite the house, they were one hundred and fifty or two hundred yards from the body of the deceased. But there is no direct evidence that such was the fact. The evidence, nevertheless, enables us to form an opinion as to the time that must have elapsed after the killing took place, before this conversation occurred. At the time the deceased was killed, the witness, Thornhill, and Laramore were a half or three-quarters of a mile off. The time that elapsed while they were riding this distance, necessarily intervened between the killing of the deceased and the conversation in question.
*523 In the meantime, it appears- Riggs went back from the body of the deceased to the house. The tracks cf the mule near the body of the deceased, show that he was present at the body of the deceased. He had time to return to the house and disappear before Laramore and Thornhill came up. A witness met Riggs a quarter of a mile from where deceased was killed, going in the direction of Morristown, riding a mule, and going slow. "Witness asked him what was the matter. He said they had killed Thornhill. In view of these facts, we are- constrained to say, that the conversation detailed by the witness, Thornhill, was not a part of the res gestee, and, consequently, was impropei’ly admitted.
It is insisted, there is error in the ruling of -the Court on other points.
A sister and half-sister of plaintiff in error, were examined in behalf of plaintiff in error.
We think the chai-ge of t-he Court was erroneous in this: The Court charged the jury, that “the law, in some degree, impeached or discredited the testimony of relations, from the relationship existing between them. But that if the jury are satisfied in this cause, that the statements made by the relations, were corroborated by other facts or circumstances developed in the. trial of the cause, then their testimony would be as reliable as though said witnesses were not related.-” The substance of what is here stated, is, as wo understand it, that the jury are not allowed to give full credence to the testimony of a witness related to a party, unless such testimony is corroborated by other testimony.
Whether this was the precise meaning intended to *524 be attached to wbat is here said, or not, we think the jury must have so understood it.
It is true, the fact that a witness is related to a party, is a circumstance that may be considered of by the jury, in determining the credit to be attached to his testimony; but it was erroneous to instruct the jury that the law forbids that full credence be given the testimony of such witnesses, unless it was corroborated.
Let the judgment be reversed, and the cause remanded.